CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
JACOB R. BOTHAMLEY (319457)
Jacob.Bothamley@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax:  619.400.0501

Attorney for Plaintiff Richard A. Marshack,
Trustee of the LPG Liquidation Trust

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Bankr. Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No.<br><br>**COMPLAINT FOR:**<br><br>**(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>White Collar Group Inc., a California Corporation dba Radius Financial Solutions; Michael Barrios, individually and as Chief Executive Officer of White Collar Group, Inc.,<br><br>Defendants. | **(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS WITHIN 90-DAYS OF THE PETITION DATE;** |

**(6) AVOIDANCE, RECOVERY, AND PRESERVATION OF POST-PETITION TRANSFERS;**

**(7) TURNOVER;**

**(8) AIDING AND ABETTING FRAUD; AND**

**(9) DISALLOWANCE OF CLAIMS**

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Transfers Within 90-Days of the Petition Date; (6) Avoidance, Recovery, and Preservation of Post-Petition Transfers; (7) Turnover; (8) Aiding and Abetting Fraud; and (9) Disallowance of Claims* ("Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor, The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively "Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

**STATEMENT OF THE CASE**

1.     A bankruptcy trustee may avoid and recover actual and constructively fraudulent transfers made by a debtor. In this case, while insolvent, Debtor transferred at least $400,891.54 to Defendant White Collar Group, Inc. ("Defendant White Collar"), and $95,390.24 to Defendant White Collar's dba, Radius Financial Solutions ("Radius") for a total of at least $496,281.78 within four years prior to the bankruptcy (the "Pre-petition Transfers"), which includes at least $338,036 ($294,391.54 to White Collar, and $43,644.46 to Radius) in payments from Debtor within 90 days of Debtor's petition date (the "Preference Transfers"), March 20, 2023 ("Petition Date"). Defendant White Collar also received at least $101,420.37, and Radius received at least $213,283.93 after the Petition Date ("Post-Petition Transfers"). The total of all transfers from Debtor to Defendant White Collar and Radius is at least $810,986.08 (collectively, the "Transfers").

///

2.      Reasonably equivalent value was not provided to the Debtor in exchange for the Transfers, and, as evidenced below, the Transfers were made with actual intent to hinder, delay, or defraud Debtor's creditors.

3.      Under these facts, the Trustee can avoid the Transfers and recover from Defendant White Collar as the "initial" transferee of such transfers who did not take in good faith, for value, and without knowledge of the avoidability of such transfers. Trustee seeks to avoid, recover, and preserve the Transfers for the benefit of the Estate.

## STATEMENT OF JURISDICTION AND VENUE

4.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

5.      Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

6.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief contained herein is determined not to be a non-core proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

7.      Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

8.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

///

**PARTIES**

9.     The Litigation Practice Group P.C. (previously defined as "Debtor" or "LPG") is a corporation organized under the laws of the State of California that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

10.    Tony Diab ("Diab") operated, dominated and controlled Debtor.

11.    Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Estate.  Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust. All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current Liquidating Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

12.    Plaintiff alleges that, at all relevant times, Defendant White Collar was a domestic corporation formed and existing under the laws of the State of California that did business as Radius Financial Solutions. According to the California Secretary of State website, Defendant White Collar's principal address was 12235 Beach Blvd, Suite 210A, Stanton, California 90680.  Defendant White Collar's agent, Chief Executive Officer ("CEO"), and defendant in this action, Michael Barrios ("Defendant Barrios"), according to the California Secretary of State's website, may be served at this address, or alternatively, on information and belief, at 2008 West Camden Place, Santa Ana, California 92704-4062. A true and correct copy of Defendant White Collar's information from the California Secretary of State website is attached hereto as **Exhibit 1**.

13.    According to the California Secretary of State website, Defendant White Collar's status is "terminated" effective January 3, 2025. *Id.*

14.    Defendant Barrios was the CEO of Defendant White Collar at all relevant times.

**GENERAL ALLEGATIONS**

**A.     The Bankruptcy Case**

15.    On March 20, 2023 (previously defined as the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case

4

No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

16.     On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

17.     Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

**B.     Protective Order**

18.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **<u>Exhibit 2</u>** and incorporated here.

19.     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.     Debtor's Insolvency**

20.     Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC 1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and nonpriority unsecured debt of nearly $142 million listed in Debtor's schedules; and, (c) the $424 million of creditor claims filed in this Bankruptcy Case.

///

5

21.     Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. See, e.g., Global Money Mgmt., L.P. v. McDonnold, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception"). (internal citations omitted).

**D.     LPG**

22.     Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 65,000 clients nationwide.

23.     The consumers would pay LPG over a period of time via monthly debits and/or ACH debits from their bank accounts.

24.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

25.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

26.     LPG mismanaged the consumers' monthly payments.

27.     Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

28.     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

29.     The marketing companies would advertise to or call to solicit them to become clients of LPG.

30.     Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

///

6

31.    Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

32.    To facilitate the transfer of ACH Receivables to marketing affiliates, Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC, Coast Processing, LLP, Prime Logix, LLC, Maverick Management, LLC, and/or Validation Partners LLC.

33.    Under applicable state and federal laws, ACH pulls from a consumer's bank account can occur until the party initiating the payments obtains the consumer's express written consent.

34.    With respect to the ACH pulls, the consumer clients only consented to the Debtor initiating the payments from their accounts.

35.    With respect to the ACH pulls, the funds were derived from consumer clients that never consented to any law firm other than the Debtor representing them.

36.    At all times, the Transfers constituted transfers of interests of the Debtor in property as that term is defined in 11 U.S.C. § 101(54).[1]

**E.    LPG's Prepetition Creditors**

37.    Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

///

---

[1] To the extent the LPG Insiders are adjudicated to be initial transferees of the Transfers, the omission of the LPG Insiders in this Complaint is not fatal to the fraudulent transfer claims set forth herein. See *Erickson v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (9th Cir. BAP 2008) ("[W]e hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *IBT Intern., Inc. v. Northern (In re Int'l Admin. Servs., Inc,)*, 408 F.3d 689, 708 (11th Cir. 2005) ("Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."); *Leslie v. Ace Gallery N.Y. Corp. (In re Art & Architecture Books of the 21st Century)*, 2021 Bankr. LEXIS 3637, *98 (Bankr. C.D. Cal. 2022) ("The language of 11 U.S.C. § 550 does not require a trustee to successfully avoid a transfer with respect to the initial transferee in order to recover from a subsequent transferee under 11 U.S.C. § 550."); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) ("[T]he Bankruptcy Code, and specifically §§ 544(b) and 548, does not identify the proper, necessary or indispensable parties to a fraudulent transfer action, and does not state that the initial transferee is necessary.").

38.     When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[2]

39.     As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

40.     In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

41.     Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine

---

[2] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

42.     As of the filing of this complaint, approximately 5,771 claims have been filed with the Bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

**F.     Ponzi Scheme**

43.     This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. [*See* Bankr. Docket No. 1545, fn. 5.]

44.     The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

45.     "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.*, 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

46.     Based on the Ponzi Scheme presumption, the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendants, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and/or fraudulent.

**G.     The Criminal Enterprise**

47.     Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme, including those in conjunction with its affiliates and its dealings with Defendants, also constituted a criminal enterprise.

48.     This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's main case, and the Court offered the opinion:

> Through the various proceedings and evidence produced in both the main case and the various adversary proceedings, including but not limited to various Motions for Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a multitude of pleadings filed by both secured and unsecured creditors (supported by evidence presented under oath) in support of their claims, and especially the pleadings and evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the United States Trustee (an arm of the United States Department of Justice), *it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee) was in the Court's opinion, operating a criminal enterprise.*

(Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p. 3 (emphasis in original)].)

49.     As part of this criminal enterprise, Debtor and Defendants engaged in fraudulent transfers of its accounts receivables pursuant to various agreements.

**H.     Defendant White Collar**

50.     Plaintiff, on information and belief, alleges that White Collar, dba Radius, was one of the marketing companies that procured clients for LPG.

51.     Indeed, Defendant White Collar filled out an "Affiliate Set-Up Form" with Defendant Barrios listed as the owner of Defendant White Collar. The Affiliate Set-Up Form also lists a company website, banking information, and the address mentioned above as Defendant White Collar's address. A true and correct copy of the Affiliate Set-Up Form is attached hereto as **Exhibit 3**.

52.     The Affiliate Set-Up Form is undated and does not identify the principal entity, though Plaintiff, on information and belief, asserts that the principal entity was Debtor. (*See Stipulation With Defendant Tony Diab For Entry of Judgment*, Adv. Proc. 23-ap-01046-SC, dkt. 719, Exhibit 5, p. 2 and 12 (Defendant White Collar and Radius identified as Debtor's marketing affiliates.)).

53.     On information and belief, Defendant White Collar and Radius acted pursuant to an affiliate agreement with Debtor or one of the other Diab controlled entities, and referred potential clients to Debtor for a fee much in the same way as the dozens of other marketing affiliates in this case. (*Id.*)

54.     Such an affiliate agreement violates Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. Cal. Bus. & Prof. Code § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

55.     Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v.*

*Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

56.     Because such an affiliate agreement violates federal and state law, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided under the Affiliate Agreement was unlawful.

57.     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

58.     Furthermore, on information and belief, Defendants were informed of the unlawful nature of the business arrangements and willingly chose to participate. (*See Stipulation With Defendant Tony Diab For Entry of Judgment*, Adv. Proc. 23-ap-01046-SC, dkt. 719, pp. 12-13, ¶ 44.)

## I.     Defendant Barrios

59.     Defendant Barrios was, at all times mentioned herein, in an executive position with Defendant White Collar.

///

60.     As an executive of Defendant White Collar, Defendant Barrios had control of and authorized Defendant White Collar's financial operations.

61.     On information and belief, Defendant Barrios, through authorizing actions of Defendant White Collar, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

62.     Defendant Barrios used the business operations between Defendant White Collar and Debtor for his personal gain.

**J.      The Preference Letter**

63.     On or about January 22, 2024, Trustee sent a Preference Letter to Defendants (the "Preference Letter"). A true and correct copy of the Preference Letter is attached hereto as **Exhibit 4**.

64.     The Preference Letter discussed certain known transfers from Debtor that were made to Defendant White Collar prior to the Petition Date. The Preference Letter specifically referenced the known Preference Transfers. Trustee requested payment of the total amount of the Preference Transfers in exchange for a waiver and release from all claims that could be asserted by Trustee against Defendant pursuant to 11 U.S.C. §§ 547 and 550.

65.     Based on the information available to Trustee and considering the nature of the relationship between Debtor and Defendant White Collar, no potential defenses were identified that could reduce Defendant White Collar's liability for the transfers. Consequently, Defendant White Collar was requested to provide any facts and valid defenses that could substantiate its position and potentially mitigate or prevent some or all of the transfers made by Debtor.

66.     Defendant White Collar responded to the Preference Letter on February 7, 2024. A true and correct copy of the response and subsequent email exchange is attached hereto as **Exhibit 5**.

67.     Thereafter, Trustee became aware of additional transfers from Debtor to Radius mainly through the Diab controlled entity, Prime Logix LLC.

**K.      The Subject Transfers**

68.     As noted above, during the applicable reach-back period, Debtor, transferred cash to Defendant White Collar and Radius not less than $496,281.78 ($400,891.54 to Defendant White Collar

and $95,390.24 to Radius) (previously defined collectively as the "Pre-petition Transfers"). A true and correct accounting of the known transfers to Defendant White Collar and Radius during the applicable reach-back period are attached hereto as **Exhibit 6(a)** and **Exhibit 6(d)** respectively.

69.     As noted above, during the 90-day preference period, Debtor transferred not less than $294,391.54 to Defendant White Collar and at least $43,644.46 to Radius for a total of at least $338,036 (previously defined as the "Preference Transfers"). A true an correct accounting of the known Preference Transfers is attached hereto as **Exhibit 6(b)** and **Exhibit 6(e)** respectively.

70.     Finally, Debtor transferred at least $101,420.37 to Defendant White Collar and at least $213,283.93 to Radius after the Petition Date for a total of at least $314,704.30 (previously defined as the "Post-Petition Transfers"). A true and correct list of the known Post-Petition Transfers made by Debtor to Defendant White Collar and Radius is attached hereto as **Exhibit 6(c) and 6(f)** respectively.

71.     Collectively, these transfers total at least $810,986.08 (collectively, the "Transfers").

72.     The Transfers occurred between October 20, 2022 and June 6, 2023 (*Id.*)

**L.      Due Diligence**

73.     In addition to sending the Preference Letter, Plaintiff has been in contact with Defendants and their counsel since February of 2024, and attempted to resolve this matter informally to no avail mainly due to Defendants' lack of responsiveness. (*See* **Exhibit 5**.)

74.     Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

**M.      Proof of Claim**

75.     On February 23, 2024, Defendant White Collar filed proof of claim 2504-1 in the amount of $1.00. A true and correct copy of Claim 2504-1 is attached hereto as **Exhibit 7**.

76.     The proof of claim description states, "Services performed and still evaluating full extent of this claim. We will amend once finalized review of records."

77.     The services alluded to in the proof of claim description are likely, as noted above, procurement and referral of potential clients to Debtor.

78.    To Trustee's knowledge, Proof of Claim 2504-1 has not been amended.

## FIRST CLAIM FOR RELIEF

### Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer

### 544, 550, and 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07

### (Against Defendant White Collar and Radius)

79.    Plaintiff incorporates by reference Paragraphs 1 through 78 and realleges these paragraphs as though set forth in full.

80.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code section 3439.04(a)(1).

81.    The Pre-Petition Transfers were of property of Debtor as defined in 11 U.S.C. § 101(54).

82.    The Pre-Petition Transfers were made within four years of the Petition Date.

83.    The Pre-Petition Transfers were made with the actual intent to hinder, delay, or defraud Debtor's creditors.

84.    At the time each Pre-Petition Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Pre-Petition Transfer and on the Petition Date.

85.    Debtor had been sued or threatened with suit before some or all of the Pre-Petition Transfers occurred.

86.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant White Collar and Radius sums received from consumers pursuant to its affiliate agreement, which constitutes an illegal capping agreement between Defendant White Collar and Debtor.

87.    Debtor incurred substantial debt shortly before or shortly after some or all of the Pre-Petition Transfers occurred.

88.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in California Civil Code

section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

89.    Debtor received less than reasonably equivalent value in exchange for the Pre-Petition Transfers because the referrals from Defendant White Collar and Radius to Debtor were illegal under federal and state law, nullifying their value as consideration.

90.    Defendant White Collar and Radius received at least $496,281.78 of property belonging to Debtor through the Pre-Petition Transfers.

91.    The Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

92.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

93.    Plaintiff alleges that White Collar and Radius did not receive the Pre-Petition Transfers in good faith, for value, and without knowledge of their avoidability.

94.    The affiliate agreement(s) with Defendant White Collar and Radius, as well as the transfers of Debtor's funds pursuant to those agreements are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and California Civil Code sections 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

95.    Based on the foregoing, Plaintiff may avoid the Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and California Civil Code section 3439.04(a)(1).

96.    Based on the foregoing, Plaintiff may recover and preserve the Pre-Petition Transfers from Defendant White Collar and Radius as the initial transferees for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and California Civil Code section 3439.07.

///

///

///

///

**<u>SECOND CLAIM FOR RELIEF</u>**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, and 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05, and 3439.07**

**(Against Defendant White Collar and Radius)**

97.     Plaintiff hereby incorporates by reference Paragraphs 1 through 96 and realleges these paragraphs as though set forth in full herein.

98.     Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code sections 3439.04(a)(2) and 3439.05.

99.     As noted above, Debtor did not receive reasonably equivalent value in exchange for the Pre-Petition Transfers because the referrals from Defendant White Collar and Radius were illegal under federal and state law, nullifying their value as consideration.

100.     The Pre-Petition Transfers were made within four years of the Petition Date.

101.     The Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

102.     As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

103.     At the time each Pre-Petition Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

104.     At the time each Pre-Petition Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

105.     At the time each Pre-Petition Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

106.     Plaintiff alleges that Defendant White Collar and Radius did not receive the Pre-Petition Transfers in good faith, for value, and without knowledge of their avoidability.

///

107.    The affiliate agreement(s) with Defendant White Collar and Radius, as well as the transfers of Debtor's funds pursuant to those agreements are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and California Civil Code sections 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

108.    Based on the foregoing, Plaintiff may avoid the Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and California Civil Code sections 3439.04(a)(2) and 3439.05.

109.    Based on the foregoing, Plaintiff may recover and preserve the Pre-Petition Transfers from Defendant White Collar and Radius as the initial transferees for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and California Civil Code sections 3439.07.

**THIRD CLAIM FOR RELIEF**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 548(a)(1)(A), 550, and 551**

**(Against Defendant White Collar and Radius)**

110.    Plaintiff hereby incorporates by reference Paragraphs 1 through 109 and realleges these paragraphs as though set forth in full herein.

111.    One or more of the Pre-Petition Transfers were made within two years of the Petition Date.

112.    The Pre-Petition Transfers were made to White Collar and Radius with the actual intent to hinder, delay, or defraud Debtor's creditors.

113.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1).

114.    At the time each Pre-Petition Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

115.    Debtor had been sued or threatened with suit before some or all of the Transfers occurred.

///

116.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant White Collar and Radius sums received from consumers pursuant to its affiliate agreement, which constitutes an illegal capping agreement between Defendant White Collar and Debtor.

117.     Debtor incurred substantial debt shortly before or shortly after some or all of the Pre-Petition Transfers occurred.

118.     The Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

119.     As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

120.     Plaintiff alleges that White Collar and Radius did not receive the Pre-Petition Transfers in good faith, for value, and without knowledge of their avoidability because the referrals from White Collar and Radius were illegal under federal and state law, nullifying their value as consideration.

121.     Based on the foregoing, Plaintiff may avoid the Pre-Petition Transfers under 11 U.S.C. § 548(a)(1)(A).

122.     Based on the foregoing, Plaintiff may recover and preserve the avoided Pre-Petition Transfers up to the amount of the Pre-Petition Transfers from Defendant White Collar and Radius as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**FOURTH CLAIM FOR RELIEF**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 548(a)(1)(B), 550, and 551**

**(Against Defendant White Collar and Radius)**

123.     Plaintiff hereby incorporates by reference Paragraphs 1 through 122 and realleges these paragraphs as though set forth in full herein.

124.     One or more of the Pre-Petition Transfers were made within two years before the Petition Date.

125.     Debtor did not receive reasonably value in exchange for the Pre-Petition Transfers because the referrals from Defendant White Collar and Radius were illegal under federal and state law, nullifying their value as consideration.

126.    The Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

127.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

128.    When the Pre-Petition Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

129.    When the Pre-Petition Transfers occurred, Debtor was about to incur debts that were beyond its ability to pay.

130.    At the time each Pre-Petition Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

131.    Based on the foregoing, Plaintiff may avoid the Pre-Petition Transfers under 11 U.S.C. § 548(a)(1)(B).

132.    Based on the foregoing, Plaintiff may recover and preserve the avoided Pre-Petition Transfers from Defendant White Collar and Radius as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

<u>**FIFTH CLAIM FOR RELIEF**</u>

**Avoidance, Recovery, and Preservation of Preferential Transfers**

**to Defendants in Preference Period**

**11 U.S.C. §§ 547, 550, and 551**

**[Against Defendant White Collar and Radius]**

133.    Plaintiff hereby incorporates by reference Paragraphs 1 through 132 and realleges these paragraphs as though set forth in full herein.

134.    As noted above, at least $338,036 of the Transfers from Debtor to Defendant White Collar and Radius occurred during the 90-day preference period.

135.    These Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant White Collar and Radius, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant White Collar and Radius.

136.    The Preference Transfers happened while LPG was insolvent.

137.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

138.    Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

139.    As a result of the Preference Transfers, Defendant White Collar and Radius recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Defendant White Collar and Radius received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

140.    Based on the foregoing, Plaintiff may recover and preserve the avoided Preference Transfers from Defendant White Collar and Radius as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**<u>SIXTH CLAIM FOR RELIEF</u>**

**Avoidance, Recovery, and Preservation of Unauthorized Post-Petition Transfers**

**11 U.S.C. § 549, 550, and 551**

**[Against Defendant White Collar and Radius]**

141.    Plaintiff hereby incorporates by reference Paragraphs 1 through 140 and realleges these paragraphs as though set forth in full herein.

142.    As noted above, Defendant White Collar and Radius received at least $314,704.30 in Post-Petition Transfers from Debtor. The Post-Petition Transfers were neither authorized by any section of the Bankruptcy Code nor by any order of this Court.

143.    Based on the foregoing, Plaintiff may recover and preserve the avoided Post-Petition Transfers from Defendant White Collar and Radius as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

///

///

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**Turnover of Estate Property**

**11 U.S.C. § 542**

**[Against Defendant White Collar and Radius]**

144.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 143 as though set forth in full.

145.   Defendant White Collar and Radius has possession or control over property of the Estate in the form of the Transfers made pursuant to illegal and unenforceable agreements.

146.   The Transfers are not of inconsequential value to the Estate.

147.   The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

148.   Accordingly, Trustee is entitled to a judgment for turnover of the Transfer pursuant to 11 U.S.C. § 542.

**<u>EIGHTH CLAIM FOR RELIEF</u>**

**Aiding and Abetting Fraudulent Transfer**

**Cal. Civ. Code § 3439 et seq.**

**[Against All Defendants]**

149.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 148 as though set forth in full.

150.   Defendants have possession or control over property of the Estate including, but not limited to, the Transfers made pursuant to illegal and unenforceable agreements.

151.   Defendants had knowledge of the fraudulent transactions, transfers, and agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

152.   Defendants, with the foregoing knowledge, intended to, and did, help the Debtor and other scheme participants in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

///

///

153.    At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal capping scheme and signing up consumer clients to keep the business going.

154.    Defendants assisted, and did actually engage in, LPG's commission of fraud and Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

155.    Without in any way limiting the foregoing, as CEO of Defendant White Collar and Radius, Defendant Barrios used his control over Defendant White Collar and Radius to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

156.    The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these fraudulent transfers and Ponzi scheme include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

157.    The property, including, but not limited to, the Transfers are not of inconsequential value to the Estate and recovering these funds is paramount to Debtor's ability to pay creditors.

158.    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

## NINTH CLAIM FOR RELIEF

### Disallowance of Claims

### 11 U.S.C. § 502(d)

### [Against Defendant White Collar]

159.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 158 as though set forth in full.

160.    As noted, on February 23, 2024, Defendant White Collar filed proof of claim 2504-1 in the amount of $1.00.

161.    The proof of claim description states, "Services performed and still evaluating full extent of this claim. We will amend once finalized review of records."

162.    The services alluded to in the proof of claim description are likely, as noted above, procurement and referral of potential clients to Debtor.

163.    Because the referrals from Defendant to Debtor are illegal under federal and state law, any agreement for that purpose is void.

164.    For this reason, to the extent the proof of claim is based on the conduct set forth above, proof of claim 2504-1 should be disallowed in its entirety under 11 U.S.C. § 502(d).

165.    Moreover, to Plaintiff's knowledge, proof of claim 2504-1 has not been amended, and fails to meet the standard of sufficiency under Federal Rule of Bankruptcy Procedure 3001(c) to provide evidence and specific information in support of the claim.

## Reservation Of Rights

166.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## Prayer

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

**On the First Claim for Relief**

1.    That the Pre-Petition Transfers be avoided under 11 U.S.C. § 544 and California Civil Code sections 3439.04(a)(1) and 3439.07;

2.    That Plaintiff recover the avoided Pre-Petition Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Second Claim for Relief**

3.    That the Pre-Petition Transfers be avoided under 11 U.S.C. § 544 and California Civil Code sections 3439.04(a)(2), 3439.05 and 3439.07;

4.    That Plaintiff recover the avoided Pre-Petition Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550

///

///

**On the Third Claim for Relief**

5.	That the Pre-Petition Transfers be avoided under 11 U.S.C. § 548(a)(1)(A);

6.	That Plaintiff recover the avoided Pre-Petition Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fourth Claim for Relief**

7.	That the Pre-Petition Transfers be avoided under 11 U.S.C. § 548(a)(1)(B);

8.	That Plaintiff recover the avoided Pre-Petition Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fifth Claim for Relief**

9.	That the Preference Transfers be avoided under 11 U.S.C. § 547

10.	That Plaintiff recover the avoided Preference Transfers or a money judgment in an amount equal to the value of the avoided Preference Transfers pursuant to 11 U.S.C. § 550;

**On The Sixth Claim For Relief**

11.	That the Post-Petition Transfers be avoided under 11 U.S.C. § 549

12.	That Plaintiff recover the avoided Post-Petition Transfers or a money judgment in an amount equal to the value of the avoided Post-Petition Transfers pursuant to 11 U.S.C. § 550;

**On The Seventh Claim For Relief**

13.	Ordering Defendant White Collar and Radius to immediately turn over the value of the Transfers;

**On The Eighth Claim For Relief**

14.	Awarding Plaintiff compensatory damages in an amount to be determined at trial;

**On the Ninth Claim For Relief**

15.	Order disallowing proof of claim 2504-1.

**On All Claims for Relief**

16.	That Plaintiff only recover a single satisfaction of all avoided Transfers under 11 U.S.C. § 550(d);

17.	That all avoided Transfers be preserved pursuant to 11 U.S.C. § 551;

///

1        18.     For prejudgment interest under state law on all fraudulent transfer claims from the date

2    each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re*

3    *Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v.*

4    *Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

5        19.     For pre-judgment interest on all other claims at the maximum rate allowed by law;

6        20.     For costs incurred by Plaintiff in prosecuting this action; and

7        21.     For such other and further relief as the Court may deem just and proper.

8

9    DATED: March 17, 2025                    Respectfully submitted,

10                                            DINSMORE & SHOHL LLP

11

12
                                             By: /s/ Jacob R. Bothamley
13                                               Yosina M. Lissebeck
                                                 Jacob R. Bothamley
14                                               Attorney for Plaintiff Richard A. Marshack,
                                                 Trustee of The LPG Liquidation Trust
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

California
*Secretary of State*

Business    UCC

Login

Home

Search

Forms

Help

# Business Search

*The California Business Search provides access to available information for **corporations**, **limited liability companies** and **limited partnerships** of record with the California Secretary of State, with **free PDF copies** of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.*

*Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are **not contained** in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.*

### Basic Search

*A Basic search can be performed using an entity name or entity number. When conducting a search by an entity number, where applicable, **remove "C"** from the entity number. Note, **a basic search** will search **only ACTIVE entities** (Corporations, Limited*

WHITE COLLAR GROUP INC
(4067693)



Request
Certificate

| | |
|---|---|
| *Initial Filing Date* | 09/22/2017 |
| *Status* | Terminated |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Inactive Date* | 01/03/2025 |
| *Formed In* | CALIFORNIA |
| *Entity Type* | Stock Corporation - CA - General |
| *Principal Address* | 12235 BEACH BLVD STE 210A STANTON, CA 90680 |
| *Mailing Address* | 12235 BEACH BLVD STE 210A STANTON,CA90680 |
| *Agent* | Individual Michael Barrios 12235 BEACH BLVD SUITE 210A STANTON, CA  90680 |



View History



Request Access

Business      UCC

Home

Search

Forms

Help

*...name variations,*
*Unincorporated Common*
*Interest Developments, and*
*Out of State Associations.*
*The basic search performs a*
*contains ?keyword? search.*
*The Advanced search allows*
*for a ?starts with? filter. To*
*search entities that have a*
*status other than active or*
*to refine search criteria, use*
*the **Advanced** search*
*feature.*

### Advanced Search

*An Advanced search is*
*required when searching for*
*publicly traded disclosure*
*information or a status*
*other than active.*

*An Advanced search allows*
*for searching by specific*
*entity types (e.g., Nonprofit*
*Mutual Benefit Corporation)*
*or by entity groups (e.g., All*
*Corporations) as well as*
*searching by ?begins with?*
*specific search criteria.*

**Disclaimer:** *Search results are*
*limited to the 500 entities closest*
*matching the entered search*
*criteria. If your desired search*
*result is not found within the*
*500 entities provided, please*
*refine the search criteria using*
*the Advanced search function*
*for additional results/entities.*
*The California Business Search is*
*updated as documents are*
*approved. The data provided is*
*not a complete or certified*
*record.*

*Although every attempt has*
*been made to ensure that the*
*information contained in the*
*database is accurate, the*
*Secretary of State's office is not*
*responsible for any loss,*
*consequence, or damage*
*resulting directly or indirectly*
*from reliance on the accuracy,*
*reliability, or timeliness of the*

## WHITE COLLAR GROUP INC (4067693)



Request
Certificate

| | |
| --- | --- |
| *Initial Filing Date* | 09/22/2017 |
| *Status* | Terminated |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Inactive Date* | 01/03/2025 |
| *Formed In* | CALIFORNIA |
| *Entity Type* | Stock Corporation - CA - General |
| *Principal Address* | 12235 BEACH BLVD STE 210A STANTON, CA 90680 |
| *Mailing Address* | 12235 BEACH BLVD STE 210A STANTON,CA90680 |
| *Agent* | Individual Michael Barrios 12235 BEACH BLVD SUITE 210A STANTON, CA  90680 |



View History



Request Access



Business     UCC

*certificates of status, (1) locate an entity using the search; (2) select Request Certificate in the right-hand detail drawer; and (3) complete your request online.*

Home

Search

Forms

Help

White Collar 🔍

Advanced ⌄

Results: 2

| Entity Information | Initial Filing Date | S |
|---|---|---|
| WHITE COLLAR AUTO GROUP, INC. (4692065) ❯ | 01/25/2021 | T |
| WHITE COLLAR GROUP INC (4067693) ❯ | 09/22/2017 | T |

# WHITE COLLAR GROUP INC (4067693)

Request Certificate

| | |
|---|---|
| Initial Filing Date | 09/22/2017 |
| Status | Terminated |
| Standing - SOS | Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Inactive Date | 01/03/2025 |
| Formed In | CALIFORNIA |
| Entity Type | Stock Corporation - CA - General |
| Principal Address | 12235 BEACH BLVD STE 210A STANTON, CA 90680 |
| Mailing Address | 12235 BEACH BLVD STE 210A STANTON,CA90680 |
| Agent | Individual Michael Barrios 12235 BEACH BLVD SUITE 210A STANTON, CA  90680 |

View History          Request Access

# EXHIBIT 2

1    CHRISTOPHER B. GHIO (259094)
     christopher.ghio@dinsmore.com
2    CHRISTOPHER CELENTINO (131688)
     christopher.celentino@dinsmore.com
3    YOSINA M. LISSEBECK (201654)
     yosina.lissebeck@dinsmore.com
4    DINSMORE & SHOHL LLP
5    655 West Broadway, Suite 800
     San Diego, California 92101
6    Tele: 619.400.0500
7    Fax: 619.400.0501

8    Sarah S. Mattingly (Ky. Bar 94257)
     sarah.mattingly@dinsmore.com
9    DINSMORE & SHOHL, LLP
10    101 S. Fifth Street, Suite 2500
     Louisville, Kentucky 40202
11    Tele: 859-425-1096
     Fax: 502-585-2207
12    (Admitted pro hac vice)

13    Special Counsel to Richard A. Marshack

**FILED & ENTERED**

**JUN 03 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No: 23-bk-10571-SC |
| | Chapter 11 |
| The Litigation Practice Group P.C., | **ORDER GRANTING MOTION FOR ENTRY OF PROTECTIVE ORDER AND THE PROTECTIVE ORDER** |
| Debtor(s), | Date:    May 23, 2024 |
| | Time:    1:30 p.m. |
| | Judge:   Hon. Scott C. Clarkson |
| | Place:    Courtroom 5C (via Zoom)[1] |
| |          411 West Fourth Street |
| |          Santa Ana, CA 92701 |

---

[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at:
http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 2, Page 32

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising
in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

## PROTECTIVE ORDER

### 1.      DEFINITIONS

1.1     "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2     This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3     "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4     "Receiving Party" means a Party that receives Confidential Information during the Action.

2

1.5   "Party" or "Parties" means person or entity subject to this Protective Order.

**2.     SCOPE OF THIS PROTECTIVE ORDER**

2.1   Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.     DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1   This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2   <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

Exhibit 2, Page 34

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

       3.3   <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

       3.4   <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

       4.1   In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

Exhibit 2, Page 35

1    resolved by the Parties or ruled upon by the Court, the designated information shall remain protected

2    under this Protective Order. The failure of any Receiving Party to challenge a designation does not

3    constitute a concession that the designation is proper or an admission that the designated information

4    is otherwise competent, relevant, or material.

5       **5.   LIMITED ACCESS/USE OF PROTECTED INFORMATION**

6       5.1   <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action

7    and designated under this Protective Order may be used for preparation for trial and preparation for

8    any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no

9    other purpose, without the written consent of the Designating Party. No Confidential Information may

10   be disclosed to any person except in accordance with the terms of this Protective Order, unless the

11   parties are co-counsel or have entered into joint defense agreements. All persons in possession of

12   Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage

13   of such information to ensure that its confidentiality is maintained. This obligation includes, but is

14   not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of

15   any subpoena that seeks production or disclosure of any designated information and consulting with

16   the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or

17   Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the

18   disclosing person or party to sanctions.

19      5.2   <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this

20   Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or

21   reviewed by the following:

22      a)    The Court, its personnel, and court reporters;

23      b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a

24   joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel

25   in the Action and are informed of the duties and obligations imposed hereunder;

26      c)    The Parties, including their clients, agents and employees who are assisting or have

27   reason to know of the Action;

28   / / /

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

**6.**  **CLAW-BACK REQUESTS**

6.1  <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2  <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

7

## 7.    DURATION/CONTINUED RESTRICTIONS

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the
Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the
Designating Party shared or disclosed designated information in any of the matters under the Action
returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or
Party may retain designated information that it received from any other Party or non-party under this
Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one
copy for their respective legal files, and who must also describe to the Designating Party the extra
steps taken to protect its legal file containing paper and/or electronic copies of the designated
information so that it is not accessed, used, or disclosed inconsistently with the obligations under this
Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision
does not apply to Trustee, who may retain and use – consistent with this Order – Confidential
Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and
use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter
in the Action.

## 8.    PRIVILEGED OR PROTECTED INFORMATION

8.1    Nothing in this Protective Order shall require disclosure of information that is
protected by the attorney-client privilege, the work-product protection, or any other legally cognizable
privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is
inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not
constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or
any other information that may be protected from disclosure by a Privilege or Protection in any
proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection,
then it shall refrain from examining the document any more than is essential to ascertain if it is
privileged or protected and shall promptly notify the producing Party in writing that the receiving

Exhibit 2, Page 39

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3    If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4    The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Exhibit 2, Page 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

1

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)
11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14
                **UNITED STATES BANKRUPTCY COURT**
15
                **CENTRAL DISTRICT OF CALIFORNIA**
16

17
   In Re                              Case No. 8:23-BK-10571-SC
18
                                      Chapter 11
19
   The Litigation Practice Group P.C.,  **EXHIBIT A TO STIPULATED**
20                                       **ORDER**
                   Debtor(s),
21                                    Date:   May 23, 2024
22                                    Time:   1:30 p.m.
                                      Judge:  Hon. Scott C. Clarkson
23                                    Place:  Courtroom 5C[1] - Via Zoom
24                                            411 W. Fourth Street
                                              Santa Ana, CA  92701
25

26

27  ───────────────
    [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
28    publicly posted hearing calendar, which may be viewed online at:
      http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                    1

This is to certify that:

      (a)     I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and any and all litigation commenced by Trustee;

      (b)     I have read the Stipulated Protective Order; and

      (c)     I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

_____
      Signature

_____
      Printed Name

# EXHIBIT 3

# AFFILIATE SET-UP FORM

## Contact Information

Company Name: White Collar Group, Inc.          Website: radiusfinancialsolutions.com

Address: 12235 Beach Blvd                                                Suite 200
         Street                                        Suite/Unit #

         Stanton                        CA                         90680
         City                           State                      Zip Code

Phone: _____     Fax: _____
                        Ext.

Name of Owner: Michael          Barrios
               First            Last                    Email Address

Name of Partner: _____
(if applicable)    First            Last                    Email Address

Management Contact: Karla        Verdinez
(if applicable)     First         Last                    Email Address

Contact for Reports: Michael      Barrios
(if applicable)      First         Last                    Email Address

Tech Contact: Michael            Barrios
(if applicable)  First           Last                    Email Address

## Please complete the bottom portion to receive funds via direct deposit

Bank Name:_____      _____

Account Number:_      _____

Routing Number:_      _____

# EXHIBIT 4

Richard A. Marshack
D. Edward Hays
David A. Wood
Laila Masud
Tinho Mang
Bradford N. Barnhardt
Sarah R. Hasselberger
Kevin M. Marshack

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw
Chad V. Haes



Sender: Kristine A. Thagard
kthagard@marshackhays.com
Reference No. 9999-001

22 January 2024

*VIA U.S. MAIL ONLY*

*CONFIDENTIAL SETTLEMENT COMMUNICATION*
*SUBJECT TO FEDERAL RULE OF EVIDENCE 408*

White Collar Group Inc.
Attention: Michael A Barrios
12235 Beach Blvd
Ste 200
Stanton, CA 90680

> Re:    In re: The Litigation Practice Group, P.C.
>          U.S. Bankruptcy Court, Central District of California, Case No. 8:23-bk-
>          10571

Dear Sir/Madam:

    This firm represents Richard A. Marshack, solely in his capacity as Chapter 11
Trustee ("Trustee") for the bankruptcy estate of The Litigation Practice Group, P.C.
("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and
his appointment as Trustee, the Trustee has the obligation to investigate and pursue
claims, including preference actions.

    After a review of the Debtor's books and records, the Trustee believes that he
may have claims against you to avoid and recover certain preference payments. This
letter is written in an attempt to settle such claims, and its contents may not be used for
any other purpose.

    Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to
avoid certain payments made to creditors within the 90-day period preceding the filing
of a bankruptcy case. Our preliminary investigation has identified certain transfers from
the Debtor(s) to you within the 90-day period prior to March 20, 2023, the date upon

White Collar Group Inc.
22 January 2024
Page 2

which the Debtor filed its bankruptcy case. These transfers are listed on the attached
"Preference Transfer Schedule" showing the date and amount, according to the Debtor's
books and records, of each transfer or other payment. The payments referenced on the
"Preference Transfer Schedule" total $294,391.54 ("Preference Amount"). It appears
that these transfers are preferential transfers which can be avoided by the Trustee and
recovered from you pursuant to 11 U.S.C. §§ 547(b).  This means that the Trustee can
file suit in the bankruptcy court to recover these sums and object to payment of any
claims you have against the Debtor until the suit is resolved.

Additionally, if you have filed a proof of claim against the Debtor, that claim
may be disallowed pursuant to Section 502(d) of the Bankruptcy Code for failure to
return an avoidable transfer. This means that if the preference claims against you are not
resolved, then you may not receive a distribution from the Debtor's bankruptcy estate.
The Trustee reserves the right to object to any proof of claim that you have filed or may
file in the debtors' bankruptcy cases.

White Collar Group Inc.
22 January 2024
Page 3

Of course, we would be happy to discuss this matter with you or your counsel.

Sincerely,

KRISTINE A. THAGARD

Enclosure

White Collar Group Inc.
22 January 2024
Page 4

BY: _____

      Name:_____

      Title: _____

      Date: _____

4859-0013-1998, v. 1

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)

White Collar Group Inc

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | 18,891.54 | tNT Fed#08081 4jmorgan Chase Ban /Ftr/Bnf=White Collar Gro up Inc. Srf# 0000960076641 725 Trn#23031 7177859 Rlb# |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/24/2023 | | 55,500.00 | WIRE TRANS TAN 0224015669 022423 UBOC UB289851N Sent To: JPMORGAN CHASE BANK Beneficiary: 1/White Collar Group Inc |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/9/2023 | | 170,000.00 | WIRE TYPEWIRE OUT DATEQ3O2O9 TIME:1 605 ET TRNQ02302O900437766 SERVICE REF:473058 BNF:WHITE COLLAR GROUP INC. ID:         BNF BKJP MORGAN CHASE BANK, N. ID:0002 PMT DET:SYYNNVSKA o p Other REFERENCE: FILE PURCHASE//S |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/26/2023 | | 50,000.00 | Book Transfer Debit NC: White Collar Group Inc Stanton CA 90680-3953 US Ret: File Purchase Ire: 7728000025Jo |
| | | | | | | **294,391.54** | |

Exhibit 4, Page 51

# EXHIBIT 5

**From:** bphillips phillipslawcorporation.com <bphillips@phillipslawcorporation.com>
**Sent:** Wednesday, February 7, 2024 5:15 PM
**To:** Kristine Thagard <KThagard@MarshackHays.com>
**Subject:** Re: In Re: The Litigation Practice Group

Dear Ms. Thagard:

This office represents While Collar Group, Inc. ("WCG") We are in receipt of your correspondence dated January 22, 2024 in which you claim the firm of Marshack Hays Wood represents Richard Marshack in his capacity as Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group, PC. We have also received correspondence from the Dismore law firm claiming that it represents Mr. Marshack in his capacity as Trustee for the bankruptcy estate of The Litigation Practice Group, PC. Before WCG can respond to the substance of your correspondence, please provide us proof that your firm represents Mr. Marshack in his capacity as Trustee and not the Dinsmore Firm. Upon receipt of proof of representation, WCG will provide a response to the substance of your letter within 21 days.

In the meantime, if you have any questions, please feel free to contact me.

Sincerely,

Brent R. Phillips, Esq.
PHILLIPS LAW CORPORATION

**California Office** **Arizona Office**
801 Parkcenter Drive, Suite 105 112 North Central Avenue, 1st Floor
Santa Ana, CA 92705 Phoenix, AZ 85004
Tel: (714) 573-4087 Tel: (602) 258-0110
Dir: (714) 462-8352 Dir: (714) 462-8352
Fax: (714) 586-5499 Fax: (714) 586-5499

5

# EXHIBIT 6(a)

Exhibit 6(a), Page 54

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

White Collar Group Inc



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Credit/Deposit | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3158 | 10/31/2022 | 10/20/2022 | | | 57,000.00 | Book Transfer Debit A/C: White Collar Group Inc Stanton CA 90680-3953 US Ref: Lead Purchase Tm: 8342400293Jo |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2022 | 11/2/2022 | | | 49,500.00 | Book Transfer Debit NC: white collar Group Inc Stanton CA 90660-3953 US Tre: 6757600306Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/26/2023 | | | 50,000.00 | Book Transfer Debit NC: White Collar Group Inc Stanton CA 90680-3953 US Ret: File Purchase Ire: 7728000025Jo |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/7/2023 | | | 170,000.00 | TRANSFER LITIGATION PRACTICE :White Collar Group I Confirmation# 0381891217 |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/9/2023 | | | 170,000.00 | WIRE TYPEWIRE OUT DATEQ3O2O9 TIME:1 605 ET TRNQ02302O900437766 SERVICE REF:473058 BNF:WHITE COLLAR GROUP INC. ID:          BNF BKJP MORGAN CHASE BANK, N. ID:0002 PMT DET:SYYNNVSKA o p Other REFERENCE: FILE PURCHASE//S |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/10/2023 | | 170,000.00 | | REVERSAL LITIGATION PRACTICE :White Collar Group I Confirmation# |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/24/2023 | | | 55,500.00 | WIRE TRANS TAN 0224015669 022423 UBOC UB289851N Sent To: JPMORGAN CHASE BANK Beneficiary: 1/White Collar Group Inc |
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | | 18,891.54 | tNT Fed#08081 4jmorgan Chase Ban /Ftr/Bnf=White Collar Gro up Inc. Srf# 0000960076641 725 Trn#23031 7177859 Rib# |
| | | | | | | 170,000.00 | 570,891.54 | |

Exhibit 6(a), Page 55

# EXHIBIT 6(b)

Exhibit 6(b), Page 56

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)

White Collar Group Inc.



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Credit/Deposit | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/26/2023 | | | 50,000.00 | Book Transfer Debit NC: White Collar Group Inc Stanton CA 90680-3953 US Ret: File Purchase Ire: 7728000025Jo |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/7/2023 | | | 170,000.00 | TRANSFER LITIGATION PRACTICE :WhIte Collar Group I ConfIrmatIon# 0381891217 |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/9/2023 | | | 170,000.00 | WIRE TYPEWIRE OUT DATEQ3O2O9 TIME:1 605 ET TRNQ02302O900437766 SERVICE REF:473058 BNF:WHITE COLLAR GROUP INC. ID:          BNF BKJP MORGAN CHASE BANK, N. ID:0002 PMT DET:SYYNNVSKA o p Other REFERENCE: FILE PURCHASE//S |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/10/2023 | | 170,000.00 | | REVERSAL LITIGATION PRACTICE :White Collar Group I Confirmation# 0203288667 |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/24/2023 | | | 55,500.00 | WIRE TRANS TAN 0224015669 022423 UBOC UB289851N Sent To: JPMORGAN CHASE BANK Beneficiary: 1/White Collar Group Inc |
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | | 18,891.54 | tNT Fed#08081 4jmorgan Chase Ban /Ftr/Bnf=White Collar Gro up Inc. Srf# 0000960076641 725 Trn#23031 7177859 Rlb# |
| | | | | | | 170,000.00 | 464,391.54 | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit 6(b), Page 57

# EXHIBIT 6(c)

Exhibit 6(c), Page 58

In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)

White Collar Group Inc

**GROBSTEIN TEEPLE**

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 4/30/2023 | 4/20/2023 | | 8,850.10 | WIRE TYPEWIRE OUT DATE.'230420 TIME.'I 609 ET TRN.2023042000451 449 SERVICE REF:4893O5 BNF:WHITE COLLAR GROUP INC ID    BNF BK:JPM ORGAN CHASE BANK, N. ID:0002 PMT DET:434880638 |
| Wells Fargo | Maverick Management Group LLC | 0496 | 4/30/2023 | 4/21/2023 | | 40,000.00 | WT Fed#07866 4morgan Chase Ban /Ftr/Bnf=White Collar Group Inc Sf#00009601119112647Trn#230421220300 Rtb# |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 5/31/2023 | 5/4/2023 | | 4,741.76 | WIRE TYPEWIRE OUT DATE.230504 TIME1 646 EZ TRN2023050040049271 0 SERVICE REF:506813 BNF:WHITE COLLAR INC ID:    BNF BK:JPM ORGAN CHASE BANK. N. ID:0002 PMT DET:43701 81 36 |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/18/2023 | | 40,000.00 | WIRE TYPEWIRE OUT DATE.230518 TIME1548 ETTRN2023051800408018 SERVICE REF:432958 BNF:WHITE COLLAR INC ID:    BNF BKJPMORGAN CHASE BANK. N. 1D0002 PMT DET:3492WQDMF POP Other MARKETING FEES |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 5/31/2023 | 5/26/2023 | | 7,828.51 | WIRE TYPE:WIRE OUT DATE230526 TIMEO5O5 ET TRN:2023052500501 685 SERVICE REF220438 BNF:WHITE COLLAR GROUP INC ID    BNF BKJPM ORGAN CHASE BANK. N. ID:0002 PMT DET:439734246 |
| | | | | | | 101,420.37 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 6(c), Page 59

# EXHIBIT 6(d)

Exhibit 6(d), Page 60

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Radius Financial Solutions



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | 9201 | 10/31/2022 | 10/4/2022 | | 2,753.45 | WIRE TYPEWIRE OUT DATE.221 004 TIME:1 455 ETTRN2022100400412277 SERVICE REFO12592 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:407520462 |
| Bank of America | Prime Logix LLC | 9201 | 10/31/2022 | 10/14/2022 | | 1,246.35 | WIRE TYPE:WIRE OUT DATE221014 TIME:1 139 ET TRN:20221O1400335090 SERVICE REF009232 BNF:RADIUS FINANCIAL SOLUTIONSID:8    70 BNF BKJPMORGAN CHASE BANK. NA 1D    PMT DET:40891 2110 |
| Bank of America | Prime Logix LLC | 9201 | 10/31/2022 | 10/21/2022 | | 3,483.45 | WIRETYPE:WIRE OUT DATE221021 TIME1227 ETTRN:2022102103S2402 SERVICE REF01405 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:40981 6760 |
| Bank of America | Prime Logix LLC | 9201 | 10/31/2022 | 10/28/2022 | | 1,158.78 | WIRETYPE:WIRE OUT DATE221028 TIME1341 ETTRN:2022102800423186 SERVICE REFO13727 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:41 0779592 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/4/2022 | | 1,343.93 | WIRE TYPE:WIRE OUT DATE221 104 TIME1 432 ET TRN:20221 10400397129 SERVICE REF:O1 2827 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:411948312 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/10/2022 | | 2,136.13 | WIRE TYPE:WIRE OUT DATE:221 110 TIME:1 142 ET TRN:20221 11000332285 SERVICE REF008797 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA 1D    PMT'DET:41 2703720 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/18/2022 | | 1,388.20 | WIRE TYPE:WIRE OUT DATE:221 118 TIME:1 352 ET TRN:20221 11800366432 SERVICE REFO12671 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK, NA ID:3    PMTDET:413752952 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/22/2022 | | 946.17 | WIRE TYPE:WIRE OUT DATE:221 122 TIME:1 453 ET TRN:20221 12200411384 SERVICE REF:O1 3160 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA ID:    PMTDET:414155928 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/29/2022 | | 34,500.00 | WIRE TYPE:WIRE OUT DATE.221 129 TIME:1 127 ET TRNQO221 12900346011 SERVICE REF008629 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:41 494238023 FILES PURCHASED |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/2/2022 | | 1,179.02 | WIRE TYPE:WIRE OUT DATE:221 202 TIME:1 159 ET TRN:20221 20200373065 SERVICE REF009874 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:415691 790 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/9/2022 | | 1,610.30 | WIRE TYPE:WIRE OUT DATE:221 209 TIME1 146 ETTRN:2022120900328330 SERVICE REF:008705 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA 1D    PMT DET:41 6662804 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/23/2022 | | 1,950.09 | WIRETYPE:WIRE OUT DATE221223 TIME1O48 ETTRN:20221223OO384032 SERVICE REF009299 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:41 8567636 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/29/2022 | | 3,224.28 | WIRETYPE:WIRE OUT DATE:221229 TIME:1224 ETTRN:2022122900395715 SERVICE REFO1 1940 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMTDET:419225608 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/13/2023 | | 5,120.04 | WIRE TYPE:WIRE OUT DATE:230113 TIME:1540 ETTRN:2023011300464515 SERVICE REF:O16835 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:421 487262 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/20/2023 | | 5,119.62 | WIRE TYPE:WIRE OUT DATE23O1 20 TIME1 432 ET TRN:202301 2000397414 SERVICE REF13O13 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:422299586 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/27/2023 | | 822.03 | WIRE TYPE:WIRE OUT DATEQ3O127 TIME1 349 ETTRN:20230127OO386008 SERVICE REF012538 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:423200690 JAN 16 TO JAN 22 |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/3/2023 | | 3,756.02 | WIRE TYPE:WIRE OUT DATE230203 TIME:1157 ETTRNQ023020300364036 SERVICE REF009361 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:424347932 FOR PERIOD JAN 23 TO JAN 29 |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/6/2023 | | 20,000.00 | WIRE TYPE:WIRE OUT DATE230206 TIME1 458 ET TRN2023020600449258 SERVICE REF:O1 2395 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA 1D    PMT DET:424654294 FILE PURCHASE |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/9/2023 | | 508.17 | WIRE TYPE:WIRE OUT DATE230209 TIME:1 713 ET TRN:2023020900467956 SERVICE REF:487O15 BNF:RADIUS FINANCIAL ID:    BNF BKJPMORGAN CHASE BANK. N. ID0002 PMT DET:ARZS3GEUQ POP Other |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/10/2023 | | 3,144.21 | WIRE TYPE:WIRE OUT DATE230210 T1ME1443 ETTRN2023021000407337 SERVICE REFO141 89 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID:    PMT DET:425323906 JAN 30 TO FEB 5 |
| | | | | | | 95,390.24 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 6(d), Page 61

# EXHIBIT 6(e)

Exhibit 6(e), Page 62

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)

**GROBSTEIN TEEPLE**

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | | 9201 | 12/31/2022 | 12/23/2022 | | 1,950.09 | WIRETYPE:WIRE OUT DATE221223 TIME1O48 ETTRN:2022122300384032 SERVICE REF009299 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID    PMT DET:41 8567636 |
| Bank of America | Prime Logix LLC | | 9201 | 12/31/2022 | 12/29/2022 | | 3,224.28 | WIRETYPE:WIRE OUT DATE:221229 TIME:1224 ETTRN:2022122900395715 SERVICE REFO1 1940 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID    PMTDET:419225608 |
| Bank of America | Prime Logix LLC | | 9201 | 1/31/2023 | 1/13/2023 | | 5,120.04 | WIRE TYPE:WIRE OUT DATE:230113 TIME:1540 ETTRN:2023011300464515 SERVICE REF:O16835 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID: |
| Bank of America | Prime Logix LLC | | 9201 | 1/31/2023 | 1/20/2023 | | 5,119.62 | WIRE TYPEWIRE OUT DATE23O1 20 TIME1 432 ET TRN202301 2000397414 SERVICE REFO13O13 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID    PMT DET:422299586 |
| Bank of America | Prime Logix LLC | | 9201 | 1/31/2023 | 1/27/2023 | | 822.03 | WIRE TYPE:WIRE OUT DATEQ3O127 TIME1 349 ETTRN:2023012700386008 SERVICE REFO12538 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID    PMT DET:423200690 JAN 16 TO JAN 22 |
| Bank of America | Prime Logix LLC | | 9201 | 2/28/2023 | 2/3/2023 | | 3,756.02 | WIRE TYPE:WIRE OUT DATE230203 TIME:1157 ETTRNQ023020300364036 SERVICE REF009361 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA ID    PMT DET:424347932 FOR PERIOD JAN 23 TO JAN 29 |
| Bank of America | Prime Logix LLC | | 9201 | 2/28/2023 | 2/6/2023 | | 20,000.00 | WIRE TYPE:WIRE OUT DATE230206 TIME1 458 ET TRN2023020600449258 SERVICE REF:O1 2395 BNF:RADIUS FINANCIAL SOLUTIONS ID:    BNF BKJPMORGAN CHASE BANK. NA 1D    PMT DET:424654294 FILE PURCHASE |
| Bank of America | Litigation Practice Group PC | | 6538 | 2/28/2023 | 2/9/2023 | | 508.17 | WIRE TYPE:WIRE OUT DATE230209 TIME:1 713 ET TRN:2023020900467956 SERVICE REF:487O15 BNF:RADIUS FINANCIAL ID    BNF BKJPMORGAN CHASE BANK. N. ID0002 PMT DET:ARZ53GEUQ POP Other |
| Bank of America | Prime Logix LLC | | 9201 | 2/28/2023 | 2/10/2023 | | 3,144.21 | WIRE TYPEWIRE OUT DATE230210 T1ME1443 ETTRN2023021000407337 SERVICE REFO141 89 BNF:RADIUS FINANCIAL SOLUTIONS ID    BNF BKJPMORGAN CHASE BANK. NA ID    PMT DET:425323906 JAN 30 TO FEB 5 |
| | | | | | | | 43,644.46 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 6(e), Page 63

# EXHIBIT 6(f)

Exhibit 6(f), Page 64

In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)

Radius Financial Solutions

| Bank Name | Account Type | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Bank of America Checking | Prime Logix LLC | | 9201 | 3/31/2023 | 3/24/2023 | | 6,602.29 | WIRE TYPE:WIRE OUT DATE:230324 TIME:1 621 ET TRN:2023032400051 7324 SERVICE REF:01 6408 BNF:RADIUS FINANCIAL SOLUTIONS ID:        BNF BK:JPMORGAN CHASE BANK, NA ID:        PMT DET:431 157312 |
| Bank of America Checking | Prime Logix LLC | | 9201 | 3/31/2023 | 3/30/2023 | | 45,000.00 | WIRE TYPE:WIRE OUT DATE:230330 TIME:1 658 ET TRN:2023033000531 387 SERVICE REF:01 8430 BNF:RADIUS FINANCIAL SOLUTIONS ID:        BNF BK:JPMORGAN CHASE BANK, NA ID:        PMT DET:431 920762 |
| Bank of America Checking | Prime Logix LLC | | 9201 | 4/30/2023 | 4/7/2023 | | 6,716.89 | WIRE TYPE:WIRE OUT DATE:230407 TIME:1 430 ETTRN:2023040700248529 SERVICE REF:008247 BNF:RADIUS FINANCIAL SOLUTIONS ID:        BNF BK:JPMORGAN CHASE BANK. NA ID:        PMT DET:433249704 MAR 27 APR 02 |
| Bank of America Checking | Prime Logix LLC | | 9201 | 4/30/2023 | 4/27/2023 | | 10,475.91 | TRANSFER PRIME LOGIX LLCRadius Financial Sol Confirmation# 3762567270 |
| Bank of America Checking | Prime Logix LLC | | 9201 | 5/31/2023 | 5/5/2023 | | 40,000.00 | WIRE TYPEWIRE OUT DATE:230505 TIME:1 457 E TRN202305050041 1504 SERVICE REF:O14560 BNF:RADIUS FINANCIAL SOLUTIONS ID:        BNF BK:JPMORGAN CHASE BANK, NA ID:        PMT DET:437200040 |
| Bank of America Checking | Prime Logix LLC | | 9201 | 5/31/2023 | 5/11/2023 | | 11,750.81 | TRANSFER PRIME LOGIX LLC:Radius Financial Sol Confirmation# 0482383311 |
| Bank of America Checking | Prime Logix LLC | | 9201 | 5/31/2023 | 5/18/2023 | | 10,238.03 | WIRE TYPE:WIRE OUT DATE:230518 TIME:1 436 ETTRNQ023051800374406 SERVICE REF:41 3610 BNF:RADIUS FINANCIAL SOLUTIONS ID:        BNF BKJPMORGAN CHASE BANK. N. ID:0002 PMT DET:8PE PHKEGH POP Other marketing Fees |
| Bank of America Checking | Prime Logix LLC | | 9201 | 6/30/2023 | 6/6/2023 | 1558 | 82,500.00 | |
| | | | | | | | **213,283.93** | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit 6(f), Page 65

# EXHIBIT 7

Exhibit 6(f), Page 66

<table>
<tr><td><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor 1   The Litigation Practice Group P.C.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **23–10571**

FILED

**U.S. Bankruptcy Court
Central District of California**

2/23/2024

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

**04/22**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

White Collar Group, Inc.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

White Collar Group, Inc.
Name

12235 Beach Blvd
Suite 200
Stanton, CA 90680

Contact phone     9499546122
Contact email   whitecollargroupinc@gmail.com

Where should payments to the creditor be sent? (if different)

Name

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known)      Filed on _____  MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                Proof of Claim                page 1

Exhibit 6(f), Page 67

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ 1.00

Does this amount include interest or other charges?
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Services performed and still evaluating full extent of this claim. We will amend once finalized review of records.

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____

Amount of the claim that is secured: $ _____

Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410 Proof of Claim page 2

Exhibit 6(f), Page 68

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies

$ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     2/23/2024

              MM / DD / YYYY

/s/ Michael A Barrios

Signature

Print the name of the person who is completing and signing this claim:

Name      Michael A Barrios

              First name     Middle name     Last name

Title      CEO

Company      White Collar Group, Inc.

              Identify the corporate servicer as the company if the authorized agent is a servicer

Address      12235 Beach Blvd, Suite 200

              Number    Street

              Stanton, CA 90680

              City    State    ZIP Code

Contact phone      9499546122      Email      whitecollargroupinc@gmail.com

Exhibit 6(f), Page 69

# Adversary Proceeding Cover Sheet

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard A. Marshack, Trustee of the LPG Liquidation Trust | White Collar Group Inc., a California Corporation dba Radius Financial Solutions; Michael Barrios, individually and as Chief Executive Officer of White Collar Group, Inc. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Yosina M. Lissebeck (SBN 201654) Jacob R. Bothamley (SBN 319457) DINSMORE & SHOHL LLP 655 West Broadway, Suite 800 San Diego, CA 92101    Telephone (619) 400-0500 yosina.lissebeck@dinsmore.com jacob.bothamley@dinsmore.com | |

**PARTY** (Check One Box Only)

Plaintiffs:
☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☐ Other
☒ Trustee

Defendants:
☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☒ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint For:   (1) Avoidance, Recovery, And Preservation Of 4-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, And Preservation Of 4-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, And Preservation Of 2-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, And Preservation Of 2-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, And Preservation Of Transfers Within 90-Days Of The Petition Date; (6) Avoidance, Recovery, And Preservation Of Post-Petition Transfers; (7) Turnover; (8) Aiding And Abetting Fraud; And (9) Disallowance Of Claims

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 1,059,993.03 |

Other Relief Sought

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jacob Bothamely | | |
| DATE<br>March 17, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Tyler Powell (admitted pro hac vice)<br>Special Counsel to Richard A. Marshack, Trustee of the LPG<br>Liquidation Trust | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.